NARDA, INC., et al.

v.

**RHODE ISLAND HOSPITAL TRUST
NATIONAL BANK, et al.**

Civ. No. PN–88–783.

United States District Court,
D. Maryland.

Aug. 3, 1990.

Mark W. Foster, Stephen H. Glickman, Leslie M. Berger, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiffs.

Arvid E. Roach, II, Stephen H. Marcus, Covington & Burling, Washington, D.C., for defendant Rhode Island Hosp. Trust Nat. Bank.

Stanley L. Lipshultz, Michael T. O'Bryant, Lipshultz & Hone, Silver Spring, Md., for defendants Stephen H. Gamp and SHG Associates, Inc.

William H. Hicks, R. Wayne Pierce, Niles, Barton & Wilmer, Baltimore, Md., for defendant Hartford Life Ins. Co.

Paul F. Newhouse, Eccleston & Wolf, Baltimore, Md., James S. Ray, Laurence E. Gold, Terese M. Connerton, Connerton, Ray & Simon, Washington, D.C., for defendants Roger Slotkin and NBA Group, Inc.

NIEMEYER, District Judge.

## OPINION AND ORDER

An employee benefit plan established by NARDA, Inc. (the National Appliance and Radio–TV Dealer's Association) ("NAR-DA") to provide its members with medical benefits, life insurance, and related benefits became insolvent in May 1986 because the value of claims of participants for medical benefits exceeded the premiums collected. By September 1987 NARDA had accumulated more than $2 million in unpaid claims, and on October 31, 1987, it terminated altogether the benefits which it had been providing to members. This action, which is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, (1982), alleges that the defendants, who were retained by NARDA to provide services to the plan, mismanaged the funds and breached fiduciary duties imposed on them by ERISA.

Motions to dismiss and for summary judgment filed by various defendants present the following issues, some of which are unsettled, relating to defendants' responsibilities under ERISA:

1. When fiduciaries extend benefits under an employee benefit plan to persons not defined as beneficiaries, does the plan lose its status as an ERISA-regulated plan thereby depriving the Court of subject matter jurisdiction?

2. In the circumstances of their relationship to the plan, are several of the defendants fiduciaries who owe a duty to the plaintiffs?

3. Does ERISA provide for indemnification or contribution among culpable fiduciaries?

4. Are transactions in which NARDA retained fees for placing insurance on behalf of the plan and advanced monies to pay claims against the plan prohibited by ERISA?

## I.

### BACKGROUND

NARDA, which is an Illinois corporation, is a trade association of retail electrical appliance dealers. Since the 1950's it has provided its members with group benefits for their employees by obtaining for them group insurance for medical benefits, disability, and death. The management and administration of the benefits plan had been under the direction of Steven H. Gamp and a corporation that he controlled, SHG Associates, Inc. ("SHG"), since the late 1960's. In May 1982 Gamp concluded that the premiums paid for medical benefits could be reduced if those particular benefits became "self-insured" and were no longer underwritten by an insurance company. NARDA agreed to the self-insured medical plan, and in May 1982 NARDA offered its self-funded medical benefits plan to its members. The Court has not been presented with any trust instrument that establishes that plan, although members of NARDA and participants in the plan received a summary plan description.

Almost a year later Gamp engaged Rhode Island Hospital Trust National Bank ("the Rhode Island Bank"), which provided ERISA plan services, to establish a trust to receive from plan participants payments for premiums for obtaining insurance policies as requested, including life insurance, accidental death and dismemberment insurance, and/or group health insurance. On April 14, 1983, Gamp caused NARDA to establish a formal trust ("the NARDA Trust") with the Rhode Island Bank as its trustee. He also caused NARDA to consent to having the Rhode Island Bank, as trustee, to enter into an administration agreement with SHG, who was to act as a liaison between NARDA and the Rhode Island Bank. Although the Rhode Island Bank contends that its charge was limited to receiving premiums and obtaining insur-

ance as provided in the NARDA Trust, NARDA claims that the NARDA Trust also assumed responsibility for the preexisting plan by which NARDA provided medical benefits on a self-insured basis.

On August 1, 1985, over two years after the NARDA Trust was established, Gamp and SHG entered into an "Administrative Services Agreement" with Roger Slotkin and the entity he controlled, the NBA Group, Inc. ("NBA"), to form a new corporation named SHG Insurance Brokers, Inc. ("SHG Brokers"), to which they assigned all responsibility for administration of the NARDA account. Under the terms of the Administrative Services Agreement, SHG Brokers was to use the services of NBA to assist SHG Brokers in the administration of the NARDA Trust and the medical benefits plan. SHG Brokers was also used as a conduit through which Slotkin would gradually acquire Gamp's business.

The NARDA Trust initially obtained group life insurance from the United States Life Insurance Company, but later it switched companies and obtained the insurance from the Hartford Life Insurance Company ("the Hartford"). SHG Brokers negotiated the contract with the Hartford to provide life insurance for the NARDA Trust and also insurance against excessive losses and premiums for the self-funded medical benefits plan.

By May 1986 NARDA was unable to pay medical benefits from the cash that it had and was collecting from members as premiums. By September 1987 NARDA had accumulated more than $2 million in unpaid medical claims, and one month later, on October 31, 1987, NARDA announced the termination of all benefits. At the same time it notified the participating members that a "work-out plan" would be developed to resolve existing claims and a new fully insured plan was made available to participants. During the work-out period, NARDA advanced approximately $500,000 to an escrow fund for purposes of settling existing claims at less than 100% of their value.

NARDA, acting on behalf of its members and participants, and two individual benefi-

ciaries, Georgia La Mendola and Mark Stelter, filed this action on March 17, 1988, naming as defendants most of the persons and entities who organized or provided services to NARDA, the plans, and the NARDA Trust. On September 2, 1988, Judge Alexander Harvey, II dismissed various counts of the complaint, and an amended complaint was filed on August 1, 1989, relying solely on ERISA for jurisdiction. The amended complaint names as defendants the Rhode Island Bank, SHG, Gamp, Slotkin, NBA, and the Hartford. All of the defendants have filed motions to dismiss or for summary judgment, which have been amply briefed. Following oral argument on October 20, 1989, additional submissions were received and have been considered.

For the reasons that are given hereafter, the motion of the Rhode Island Bank to be dismissed will be granted; the motions that challenge the right under ERISA to make claims for indemnification or contribution among fiduciaries will be granted; and all other motions to dismiss or for summary judgment will be denied.

## II.

## JURISDICTION

■ Slotkin and NBA filed a motion to dismiss this action on the ground that the NARDA Trust is not an "employee welfare benefit plan" as defined by ERISA and that the Court therefore lacks subject matter jurisdiction. They contend that the NARDA Trust was not "established or maintained by an employer ... or an employee organization" because benefits were extended to anyone engaged in retailing or servicing consumer products and equipment, regardless of whether they were employers or whether they belonged to NARDA. Slotkin and NBA also contend that NARDA itself did not restrict membership in its association to employers and that therefore the employer-members did not exercise control over the plan. They rely on *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Board*, 804 F.2d 1059 (8th Cir. 1986), which held that a trust is not an "employee welfare benefit plan" if it is not restricted to "participants" as defined by

ERISA, i.e. to *employees* of an employer *or members* of an employee organization.

The motion to dismiss is opposed by the plaintiffs and by the Hartford. They point to 1) NARDA's policy that only NARDA members were eligible to participate in the NARDA Trust, 2) the NARDA Trust language itself, and 3) other indicia that the NARDA Trust was intended for NARDA members only. The NARDA Trust is described as "a group insurance plan for the benefit of employees of employers who become Participants" in the plan. Beneficiaries of the NARDA Trust were advised, "Your Plan has been established and operates under the guidelines of ERISA." A summary plan description detailed how eligibility was established for those who worked at least 30 hours a week for a participating employer and would end when the employment relationship ended. Information was provided to the beneficiaries and participants regarding their rights under ERISA. Finally, the member applications for participation in the NARDA Trust provided a certification that the applicant was a member of NARDA. The plaintiffs do acknowledge, however, that by the time of the collapse of the plan in the fall of 1987, approximately 30% of the NARDA Trust participants were not NARDA members. NARDA claims that this was due to the unauthorized actions of the administrators in admitting participants who were not NARDA members, contrary to NARDA's instructions.

Jurisdiction of the Court over the claims alleged in the amended complaint is based solely on ERISA, 29 U.S.C. §§ 1132(e) and (f). The applicability of ERISA to an employee welfare plan is restricted to "any plan, fund, or program which was heretofore or is hereafter established *or maintained by an employer or by an employee organization*, or by both...." 29 U.S.C. § 1002(1) (emphasis added). *See also* 29 U.S.C. § 1003. An employer includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for any employer in such capaci-

ty." 29 U.S.C. § 1002(5). Thus, while an employee welfare benefit plan must be one maintained by an employer or an employee organization, an employer includes a group or association of employers that would be acting on behalf of the employers if there was some organizational relationship among them. *See Credit Managers Ass'n v. Kennesaw Life and Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987). In any case, for a plan to be covered by ERISA, it is essential that its participants enjoy the benefits of the plan by reason of their employment relationship. As the court in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc), pointed out:

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants *because of their employee status in an employment relationship,* and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.

*Id.* at 1371 (emphasis added).

On the basis of these principles Slotkin and NBA argue that because approximately 30% of the participants were not NARDA members and because membership was not limited to an employment relationship, the plan is not a plan covered by ERISA and therefore the Court lacks jurisdiction over the subject matter.

In *Wisconsin Ins. Trust,* which is relied on by Slotkin and NBA, the court concluded that the trust was not an employee welfare benefit plan under ERISA. The trust, which was established and maintained by a union of school district employees, provided benefits not only to union members but also to other employees of the same school district, and the other employees comprised 30% of the plan's participants. In reaching the conclusion that the plan was not an employee welfare benefit plan under ERISA, the court noted that its participants must be restricted either to employees (if the plan is maintained by an employer) or to members (if the plan is maintained by an employee organization). *See* 29 U.S.C. § 1002(7). Since the plan was maintained by the union (an employee organization), the participant had to be a member of the union and could not be defined more broadly as any employee of the employer. The court held that because the plan was in fact designed by its terms to include all employees, whether members of the union or not, the requirements of ERISA were not satisfied. *Wisconsin Ins. Trust,* 804 F.2d at 1065.

It would be improperly generous to read *Wisconsin Ins. Trust* to hold that any time a participant·in a plan fails to satisfy the definition of a participant under ERISA, the plan loses the protection of ERISA. Were that the case, the regulatory scheme established by Congress would be subject to the whims of an administrator who deliberately or unwittingly included a participant who failed to meet the plan's requirements. The distinction to be made is between a plan *designed* by its terms to include persons not defined as participants and a properly designed plan that, through faulty implementation, in fact includes persons not defined as participants. In the first instance, the plan is established in a manner that never becomes subject to the regulation of ERISA. In the second instance, the plan is established within the scope of ERISA, and only the unauthorized act of an administrator causes participation by non-qualifying persons. If the second instance leads to the loss of ERISA protections, all regulation would be placed in the lap of an administrator, who by simple mistake or by collusion, would control the coverage of the Act and his liability under it. This was clearly not the intent of Congress.

In this case the NARDA Trust was established with the intent that it be governed by ERISA. It was properly established by an association of employers having an organizational relationship among them for the exclusive benefit of each employer and his employees. *See* Department of Labor opinion 79–41a (June 29, 1979) (LEXIS Labor Library, ERISA file). The fact that faulty implementation by fiduciaries, who are accused in this case of mis-

management, resulted in benefits being extended to persons not included by plan design will not defeat the jurisdiction that attached by the proper establishment of a plan under ERISA at its inception. Jurisdiction is proper in this Court, and accordingly, the motion to dismiss on that basis will be denied.

## III.

### FIDUCIARIES

The Rhode Island Bank, the Hartford, NBA, and Slotkin contend in their motions that under ERISA they owe no fiduciary duties to the plaintiffs. The Rhode Island Bank contends that although it is a named trustee under the NARDA Trust, it is not responsible for mismanagement of a self-insured medical benefits plan which was not the subject of the NARDA Trust. The Hartford contends that it acted in the limited role of providing insurance to the NARDA Trust, and as an insurer it did not act as a fiduciary subject to liability under ERISA. NBA and Slotkin contend that they acted only ministerially, carrying out instructions as given to them by SHG and Gamp, and therefore they did not assume the responsibilities of a fiduciary.

■ A person who is found to be a fiduciary as defined by ERISA is responsible to the plan for a breach of duty imposed on him by a trust instrument and by ERISA, *see* 29 U.S.C. § 1109, and in limited circumstances for breaches by other fiduciaries. *See* 29 U.S.C. § 1105(a). Accordingly, a resolution of these motions requires the determination in each case whether the moving party is a fiduciary, whether the charges against him are based on a breach of a fiduciary duty by him or by another fiduciary.

### The Rhode Island Bank

■ The losses described in the complaint are alleged to have occurred in connection with providing benefits under the self-insured medical benefits plan. No loss is alleged in connection with collecting premiums for the establishment of an insurance fund, holding the premiums in the fund, procuring the insurance and administering the fund and the insurance policies. The Rhode Island Bank contends that the NARDA Trust was limited to the establishment of an *insurance fund* and that it has no responsibility for the mismanagement that occurred in providing medical benefits under a plan that preceded the formation of the NARDA Trust.

The plaintiffs contend that the NARDA Trust requires the trustee to obtain health insurance and that therefore the preexisting self-insured medical benefits plan became part of the responsibility of the trustee when the NARDA Trust was established. They further contend that if not explicitly referred to in the NARDA Trust, the self-insured medical benefits plan was in any event known to the Rhode Island Bank and it has liability for failing to take steps to prevent the losses. *See* 29 U.S.C. § 1105(a)(3).

As the trustee under the NARDA Trust, the Rhode Island Bank was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). *See also* 29 C.F.R. 2509.75–8(D–3) (a trustee is by definition a fiduciary). Its duties are delineated by the trust instrument to the extent not inconsistent with ERISA. *Blackmar v. Lichtenstein,* 603 F.2d 1306, 1309 (8th Cir.1979). This principle is grounded on established principles of the common law of trusts. As stated by the Fourth Circuit, "[t]here is no firmer principle in the common law of trust than that requiring a trustee to act only in accordance with the terms of the trust." *Sinai Hosp. of Baltimore v. National Benefit Fund,* 697 F.2d 562, 566 (4th Cir. 1982). In addition to the specific duties that are undertaken in the trust instrument, the Rhode Island Bank is also charged with the general fiduciary duties imposed by ERISA. *See, e.g.,* 29 U.S.C. §§ 1104–1106, 1109. ERISA recognizes, however, that a fiduciary for one purpose may not be a fiduciary for another. *See Leigh v. Engle,* 727 F.2d 113 (7th Cir.1984). The definition of fiduciary is limited *to the extent* a person exercises discretion. 29 U.S.C. § 1002(21)(A). Thus, if a plan consists of more than one trust, the trustee of

one trust is not liable for breaches under the other. 29 U.S.C. § 1105(b)(3)(A). Likewise, if an instrument allocates responsibilities among fiduciaries, liability for breach of a fiduciary duty allocated to another may be limited. 29 U.S.C. §§ 1105(c)(2) and 1105(d). Even in the case of allocated responsibilities, however, the duties of the trustee are not delegable and a fiduciary may be liable for the breach of another fiduciary with respect to the plan if he participates in the breach, conceals it, by his own breach enables it, or has knowledge of it, unless he attempts to remedy it. 29 U.S.C. § 1105(a).

The trustee obligations of the Rhode Island Bank are enumerated in the NARDA Trust and the Court will not vary the duties imposed by that writing except as required by the provisions of ERISA. The NARDA Trust was established by the Trust Agreement dated April 14, 1983, between NARDA and the Rhode Island Bank. It provides that the trust was established "for the purpose of implementing a group insurance plan for the benefit of employers who become participants ... through the utilization of an Insurance Fund...." Article II provides for the payment to an insurance fund of an amount equal to the premiums necessary to buy insurance and an administrative charge. The insurance fund is placed in the trust of the Rhode Island Bank for the limited purposes of obtaining insurance, paying the premiums, paying administrative charges including the cost of any fidelity bonds for persons handling the money, and paying taxes as may be assessed. The instrument further provides that the amount of insurance, the type of insurance, and the effective dates are to be determined by agreement between the trustee and the insurance company and are to be approved in writing by NARDA.

The trust instrument makes no provision for the assumption of responsibility for preexisting plans or earlier established funds. Specifically, no reference is made to the self-insured medical benefits plan.

In accordance with the terms of the trust instrument and the agreement of NARDA, the Rhode Island Bank procured a group insurance policy from the United States Life Insurance Company. In the years thereafter, it transferred that policy to the Hartford. The Rhode Island Bank collected the premiums to establish the insurance fund; it obtained the policies; and it administered the insurance fund as provided in the agreement. About these facts there is no dispute among the parties.

The plaintiffs argue that the trust instrument specifically required the trustee to obtain medical benefit insurance and that therefore the trustee is liable for breach of this fiduciary duty if it did not do so. The language of the instrument, however, belies this assertion as does the conduct of the parties over the years. Article III, section 2 states, "the trustee shall cause to be issued to it, as the policyholder, an insurance policy or policies which shall provide group life insurance, group accidental death and dismemberment insurance, *and/or* group health insurance" (emphasis added). Not only did the instrument not require the trustee to obtain health insurance, since each of the policies enumerated was listed in the disjunctive, the conduct of the parties over the years suggests no demand by NARDA to have group health insurance. On the contrary, Gamp had determined less than a year earlier that medical benefits would be better provided to members by a self-insured medical benefits fund which he and SHG administered.

The Court concludes that the NARDA Trust instrument imposed no duty on the Rhode Island Bank to manage funds other than the insurance fund created by the instrument. The fund to provide benefits under the self-insured medical benefits plan was managed by persons other than the Rhode Island Bank and was not subjected to the NARDA Trust, both by intent and in fact. While NARDA may have considered its benefits plan for its members to be a comprehensive plan, it appears that more than one trust was established to implement the overall plan. Because the Rhode Island Bank is responsible only for the insurance fund established in the NARDA Trust, it had no liability for any other trust. Section § 1105(b)(3)(A) provides:

In the case of a plan the assets of which are held in more than one trust, a trustee shall not be liable under paragraph (1) except with respect to an act or omission of a trustee of a trust of which he is a trustee.

Before the Court could consider the contention of the plaintiffs that the Rhode Island Bank somehow had responsibility for the conduct of other fiduciaries who were responsible for administering the medical benefits plan, they would have to demonstrate factually that one of the conditions to liability imposed under 29 U.S.C. § 1105(a) was satisfied. That subsection provides:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

In supplemental papers submitted to the Court following the hearing on October 20, 1989, NARDA has attempted to satisfy subsection (3), alleging that the Rhode Island Bank had knowledge of a breach by another fiduciary and failed to take steps to remedy the breach. It submitted a single document captioned "New Account Worksheet" which referred to the NARDA Trust and specified, as the new account, "Prudential Life Insurance Company of America/U.S. Life Insurance Company." At the bottom of the New Account Worksheet is the note, "pending receipt of indemnity agreement." NARDA argues that

because the insurance company referred to was Prudential Life Insurance Company, the Rhode Island Bank had to know of a preexisting fund because Prudential was the carrier before the NARDA Trust was established. It contends, "had Rhode Island made even the slightest inquiry of the administrator to whom it delegated the administration of its Trust, it would have learned of the existence of the self-funded medical benefits plan."

In response the Rhode Island Bank points out that the testimony of Mr. Gamp himself confirms a different explanation. At the time the Rhode Island Bank was approached to become trustee over the insurance fund, the parties contemplated that Prudential Life Insurance Company would be the insurance company from whom a policy would be obtained by the Rhode Island Bank. Ultimately, the policy was issued by the United States Life Insurance Company as discussed between Mr. Gamp and the Rhode Island Bank. The new account memo, however, was prepared during a period when both insurance companies were considered as possible issuers under the NARDA Trust. As the Rhode Island Bank contends, "Prudential's name appears on the document cited by Mr. Foster because it was initially contemplated that the Prudential would issue a new life and AD & D insurance policy to [the Rhode Island Bank], and not because [the Rhode Island Bank] was aware of an existing policy already issued by Prudential and in effect prior to the parties entry into the April 1983 Trust Agreement."

The explanation provided by the Rhode Island Bank is supported not only by the testimony of Mr. Gamp but also by the document itself, which is entitled "New Account Worksheet" (emphasis added).

Other than the one document referred to, the plaintiffs advance no other evidence to support their contention that the Rhode Island Bank was aware of a self-insured medical benefits plan. On the contrary, the correspondence submitted by the Rhode Island Bank suggests otherwise. In the absence of any evidence to raise a dispute of material fact on this point, the

Court concludes that the Rhode Island Bank had no knowledge of the self-insured medical benefits plan and the role in that plan of SHG, Gamp and others. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (parties must show specific facts in record to demonstrate that a triable issue exists); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (conclusory statements that a genuine issue of material fact exists are not sufficient to survive summary judgment motion).

For the reasons given, the motion of the Rhode Island Bank for summary judgment will be granted, and it will be dismissed from this action. Because of the Court's decision on that motion, the Rhode Island Bank's alternative motion for summary judgment against NARDA will be denied as moot. Likewise, the motions for summary judgment against the Rhode Island Bank submitted by the Hartford, NBA and Slotkin will be denied. The Rhode Island Bank's cross-claims against the Hartford, SHG and Gamp, as well as the counterclaim against NARDA, have become moot and will be dismissed.

*The Hartford*

██ In its motion for summary judgment that it be dismissed from this case, the Hartford contends that it is not a fiduciary of the NARDA Trust but merely functioned as a "person providing services" to the NARDA Trust. *See* 29 U.S.C. § 1002(14)(B). It issued the insurance policy obtained by the NARDA Trust and assisted in providing guidelines for claims administration and collections.

Plaintiffs oppose the motion, contending that the Hartford was more than a supplier of services. They argue that the Hartford exercised discretion by (1) expecting NBA to follow certain claims paying guidelines provided by the Hartford; (2) providing Gamp with a copy of Hartford's rate manual; (3) requiring NBA to approve employers with less than ten employees for coverage under the NARDA Trust; (4) approving a misleading advertisement in a magazine that allegedly would lead readers to

believe that the Hartford underwrote the self-insured medical benefits plan; (5) expecting the administrators to report potential large claims; (6) paying administrative fees to NBA without the trustee's approval; (7) failing to secure the agreement of any party to pay termination reserves; and (8) issuing policies with inadequate underwriting information.

A fiduciary as defined by ERISA is a person who, by authority or control, exercises discretion in managing or administering a plan or in disposing of its assets or who renders investment advice for compensation in connection with the assets of the plan. 29 U.S.C. § 1002(21)(A).

Confronted with the question whether Blue Cross/Blue Shield, as an insurance company, was a fiduciary under ERISA, the court in *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir.1983), concluded that because the insurer had no control over what plan and what hospital service organization were chosen for the trust and because it had become a provider through an arm's length bargain governed by competition in the marketplace and had no control over the rates prior to its becoming the provider, it was not a fiduciary as defined by ERISA. On the other hand, in *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324 (4th Cir.1989), the court ruled that a claim against an insurance company under ERISA stated a cause of action because "section 1132(a)(1)(B) authorizes a suit by an employee against an insurance carrier responsible for administering and paying claims under a covered insurance plan." *Id.* at 326.

In the present case the Hartford had no discretion to appoint or remove the administrators or the trustee of the NARDA Trust. Deposition testimony suggests that the Hartford did provide a rate schedule to administrators of the NARDA Trust for proposed use by the trust, but apparently that schedule was not implemented as the effective rate schedule. It was also noted that the Hartford supplied NBA with guidelines for administration of its minimum premium plan claims procedures and, perhaps, assistance in pursuing claims.

While it would not seem unusual for an insurance company to provide guidelines for claims administration and collections as part of its services, the facts supporting these allegations and the inferences deducible from them could lead to a factual finding that the Hartford acted as a fiduciary, even though in a limited sense. Whether the Hartford exercised discretion depends on the resolution of disputed facts or inferences to be drawn from the facts and should not be determined as a matter of law on a motion for summary judgment. Accordingly, the motion for summary judgment of the Hartford will be denied.

*NBA and Slotkin*

■ NBA and Slotkin have moved for summary judgment contending that they are not fiduciaries with respect to the NARDA Trust and that they breached no fiduciary duty. They assert that the full range of their duties was performed fully within a framework of procedures and guidelines established by SHG and Gamp. They characterize their involvement with the NARDA Trust as "in the nature of a subcontractor to SHG and Gamp." As a subcontractor exercising ministerial functions, they contend they did not exercise discretion and therefore are not fiduciaries as defined by ERISA. They also urge that the "relative brevity" of their administrative functions in comparison to the long time service of SHG and Gamp, merits the dismissal of the claims against them on some notion of *de minimis* involvement.

The plaintiffs oppose the motion pointing out that NBA and Slotkin worked very closely with SHG and Gamp. Indeed, the relationship among those persons was more than contractual. SHG was controlled by Gamp who, together with Slotkin, formed SHG Brokers. SHG Brokers later became the administrator for the NARDA Trust. Gamp's daughter, Nancy Gamp, became a partner with Slotkin in SHG Brokers, which was organized for the purpose of Slotkin's acquiring Gamp's interest in the business. NBA and Slotkin were administrators primarily responsible for engaging the Hartford. They obtained the insurance policies, reviewed eligibility criteria for groups on behalf of the Hartford and denied participation in the NARDA Trust to those groups that did not satisfy the eligibility criteria as determined by NBA and Slotkin. The relationship between NBA and Slotkin on the one hand and SHG and Gamp on the other was documented in the Administrative Services Agreement dated August 1, 1985, in which NBA and Slotkin were to prepare and submit cost projections, maintain records of participants, claims and payments, prepare monthly bills, process all collections, make corrections or deletions and deposit checks into the NARDA account. Pursuant to that agreement, NBA in fact processed claims, maintained files, settled claims, and participated in the determination of which claims would be paid first, albeit its decisions were subject to review by SHG and Gamp.

In *American Fed'n of Unions v. Equitable Life Assur. Soc'y*, 841 F.2d 658 (5th Cir.1988), an administrator was held to be a fiduciary because he was empowered to investigate, process, resolve and pay claims to members of an ERISA fund. The court concluded that those functions clearly qualified "as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A)." *Id.* at 663. The fact that the administrator in that case was subject to trustee approval did not lessen the responsibility of the administrator as a fiduciary. As the court stated, "[the administrator's] fiduciary status was not diminished by the trustees' final authority to grant or deny claims and approve investments. The term fiduciary includes those to whom some discretionary authority has been delegated." *Id.* at 663.

While the roles of NBA and Slotkin were not as broad and all encompassing as those of SHG and Gamp, there are at least factual disputes whether NBA and Slotkin exercised fiduciary responsibility. The exercise of discretionary authority by one fiduciary does not mean that another party cannot also be a fiduciary with a differing degree of discretionary authority or control. And under ERISA, the liability relates directly to the extent of the fiduciaries' involvement. For example, 29 U.S.C. § 1002(21)(A) provides in part that a person

is a fiduciary with respect to a plan *"to the extent* ... he exercises any discretionary authority or discretionary control ..." (Emphasis added.) Similarly, at 29 U.S.C. § 1105(c) ERISA permits a trust instrument to allocate fiduciary responsibilities and to delegate certain fiduciary responsibilities under the plan. Subsection (2) goes on to provide:

> If a plan expressly provides for a procedure described in paragraph (1) [the allocation of fiduciary responsibilities], and pursuant to such procedure any fiduciary responsibility of a named fiduciary is allocated to any person, or a person is designated to carry out any such responsibility, then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility ...

29 U.S.C. § 1105(c)(2). Accordingly, to the extent that NBA and Slotkin exercised fiduciary responsibilities, as determined by the finder of fact, they may become liable for acts or omissions in carrying out those responsibilities.

In addition to the direct liability that is imposed upon fiduciaries, NBA and Slotkin are also subject to potential liability as co-fiduciaries in the circumstances described in 29 U.S.C. § 1105(a). The plaintiffs have sufficiently presented matters to raise factual disputes whether NBA and Slotkin were co-fiduciaries with SHG and Gamp in certain areas of administrative responsibility. The extent to which discretion was exercised and whether a breach took place are questions of fact that must be resolved by trial.

Accordingly, the motion of defendants NBA and Slotkin for summary judgment on the basis that they are not fiduciaries will be denied.

## IV.

## INDEMNIFICATION OR CONTRIBUTION

■ In the amended complaint NARDA seeks indemnification or contribution from the defendants for any sums for which NARDA may become responsible by reason of counterclaims. Similarly, the Rhode Island Bank claims indemnification or contribution against co-defendants. NBA, Slotkin and the Hartford challenge the right of NARDA and the Rhode Island Bank to make those claims as a matter of law. They allege that ERISA makes no provision for indemnification or contribution among fiduciaries and one should not be inferred. They also contend that even were those rights inferred, under the general principles of trust law, NARDA as a fiduciary, who was more at fault, should not be able to recover from those who allegedly were less at fault. *See, e.g.,* Restatement (Second) of Trusts § 258(1)(a) (1959).

The parties readily acknowledge that the statutory scheme makes no provision for indemnification or contribution and that if one is to be inferred, it would be part of the federal common law to be developed under ERISA.

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that state law claims for benefits under an ERISA-regulated plan were preempted by ERISA and that federal remedies provided in ERISA displace state causes of action. In reaching that conclusion, the Court observed that various Senators in Congress had expressed *expectations* that claims under ERISA will be regarded as arising under the laws of the United States in the same manner as do claims under Section 301 of the Labor Management Relations Act and that a body of federal substantive law will be developed by the courts in dealing with claims under ERISA. The Court stated:

> The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to Section 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws.

*Id.* at 56, 107 S.Ct. at 1557.

Relying on that statement, the Court in *Firestone Tire and Rubber Co. v. Bruch,*

489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), stated:

> Given this language and history [of ERISA], we have held that courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 56 [107 S.Ct. at 1557].

*Id.* at 954. Although the Court in *Firestone* assumed that it had already held in *Pilot Life* that a federal common law was to be developed under ERISA, that is not explicitly stated in *Pilot Life. Pilot Life* addressed more narrowly the intent of Congress to preempt state causes of action. Nevertheless, the essentially unanimous opinion in *Firestone* proceeded under the assumption that a common law is to be developed by the courts under ERISA.

NARDA urges, as does the Rhode Island Bank in support of its cross-claims, that the direction from the Supreme Court to develop a federal common law includes a direction to incorporate the law of trusts as developed at common law. NBA, Slotkin and the Hartford contend that that statement overstates the mandate. They argue:

> ERISA is a codification of various common law trust principles and the legislative history does reveal Congress' intent that Courts fill in the gaps of the statutory framework by developing substantive federal common law based, at least in part, on trust law. But these facts do not dictate the wholesale incorporation of the common law of trusts into the statute or the engraftment of a private right of action by breaching fiduciaries into "an enforcement scheme crafted with such evident care as the one in ERISA." *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. [134], 147 [105 S.Ct. 3085, 3092-93, 87 L.Ed.2d 96 (1985)].

The extent to which the common law of trusts is to be inferred in ERISA is by no means settled. The Seventh Circuit has held that ERISA incorporates by inference the common law rights of indemnification and contribution, *see Free v. Briody,* 732 F.2d 1331 (7th Cir.1984), while the Ninth Circuit has reached the opposite conclusion.

*See Call v. Sumitomo Bank of California,* 881 F.2d 626 (9th Cir.1989), and *Kim v. Fujikawa,* 871 F.2d 1427 (9th Cir.1989). No other circuit has addressed the issue.

Although the statements in *Firestone* distinguish the method of interpreting ERISA from the method of interpreting other statutes where an intent to develop a federal common law has not been evinced, *see, e.g., Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), and *Texas Indus. Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), the Court concludes that any mandate to develop a federal common law is not an order to brush away the intent of Congress as revealed by the statute, both in language and structure.

ERISA carefully details the duties and liabilities of fiduciaries. It is evident, both from the language of its provisions and from the legislative history, that the common law of trusts was drawn upon freely and incorporated to the extent desired. *See Firestone,* 109 S.Ct. at 954. Thus, when some clearly established aspect of common law is not incorporated, the omission would appear intended.

An analysis of ERISA reveals an intent to protect participants, beneficiaries and plans, and remedies are provided to fiduciaries only insofar as they advance that purpose. It is not surprising that rights of indemnification and contribution among culpable fiduciaries are not provided. On the contrary ERISA precisely tailors fiduciary liability to fit particular breaches, thereby minimizing any perceived need for the common law rights of indemnification and contribution.

In 29 U.S.C. § 1002(21)(A), a person is a fiduciary only "to the extent" he exercises discretion. Thus, if a plan contains two trusts, the trustee of one is not liable for breaches in connection with the other. 29 U.S.C. § 1105(b)(3)(A). Likewise, the liability of a fiduciary for a breach is limited to make good to the plan the losses that result from *his* breach, 29 U.S.C. § 1109(a), and a fiduciary is liable for the breach of another fiduciary only by his culpable par-

ticipation. Thus 29 U.S.C. § 1105 provides that a fiduciary is liable for the breach of another fiduciary with respect to a plan only if he participates in or conceals the breach or if he enables the breach to occur by his own breach or if he knew of the breach and took no steps to remedy it. Not unsurprisingly, this section parrots the Restatement (Second) of Trusts § 224(2) which provides:

(2) A trustee is liable to the beneficiary, if he

(a) participates in a breach of trust committed by his co-trustee; or

(b) improperly delegates the administration of the trust to his co-trustee; or

(c) approves or acquiesces in or conceals a breach of trust committed by his co-trustee; or

(d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust; or

(e) neglects to take proper steps to compel his co-trustee to redress a breach of trust.

The Act also permits contracting parties to allocate responsibilities among fiduciaries and limit their responsibilities similarly. *See* 29 U.S.C. §§ 1105(c) and (d).

While ERISA thus describes in detail fiduciary duties and similarly apportions their liability, no section similar to Restatement (Second) of Trusts § 258 (providing for contribution or indemnity) is included. It is a long-accepted principle of statutory construction that when a statute addresses specific remedies it intends to exclude others. This is noted particularly in the context of ERISA in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985):

The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." (Citation omitted.)

\* \* \* \* \* \*

We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA. As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 [100 S.Ct. 242, 246–47, 62 L.Ed.2d 146] (1979): "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–574, 99 S.Ct. 2479, 2486–2488, 61 L.Ed.2d 82 (1979). "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. at 97 [101 S.Ct. at 1583–84].

*Id.* at 146–47, 105 S.Ct. at 3092–3093.

It thus appears that the failure to include the rights of contribution and indemnity in ERISA was intended by Congress and the omission of those rights is not an unaddressed detail or gap to be filled by a federal common law.

In construing 29 U.S.C. § 1109 (relating to the duties of fiduciaries), the Supreme Court in *Russell* reached a similar conclusion. When confronted with the issue whether common law contractual claims should be inferred, the Court stated:

Thus, the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) [29 U.S.C. § 1109(a)] Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra contractual damages caused by improper or untimely processing of benefit claims.

473 U.S. at 148, 105 S.Ct. at 3093.

NARDA and the Rhode Island Bank have urged that even though *Russell* is properly applied to exclude from 29 U.S.C. § 1109 any right to contribution or indemnity, the holding does not extend to those rights under 29 U.S.C. § 1132, the section providing for civil enforcement. Section 1132(a) provides in relevant part:

A civil action may be brought—

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...

NARDA and the Rhode Island Bank argue that the mandate to develop a federal common law, combined with the long-standing provisions in the common law of trusts which embrace the right of contribution and indemnity, permit consideration of the strong arguments for contribution and indemnity. They urge that:

The remedies of contribution/indemnity establish equity among fiduciaries by distributing the burden of loss according to relative fault, without interfering with the principle of joint and several liability. [Citation omitted.] Indemnity and contribution are particularly appropriate under ERISA where the definition of a fiduciary sweeps broadly and has the potential for making a passive fiduciary the insurer of wrongdoing of which it was unaware. Moreover, the absence of a right of contribution/indemnity would inhibit otherwise willing persons from agreeing to act in fiduciary roles with respect to employee benefit plans for fear that they might become liable for the actions of persons over whom they had no control, and would have no possible legal recourse against those persons.

These arguments are not unpersuasive and would be substantial reasons for law makers to consider the inclusion of indemnification or contribution. In this context, however, they must be addressed to Congress. The Court is limited to determining what Congress intended and only then, if a gap exists, filling in with development of a federal common law which is consistent with the purposes intended.

On the issue whether 29 U.S.C. § 1132(a) permits an inference of indemnification and contribution when earlier sections such as 29 U.S.C. § 1109 do not impose duties among co-fiduciaries except as noted above, an analysis of the relationship of § 1132(a) to the larger body of ERISA is revealing. Section 1132(a)(3) permits a court in a civil action to award "other appropriate equitable relief." The statute, however, restricts the relief "(i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...." 29 U.S.C. § 1132(a)(3)(B). In the case of redressing the violations of a fiduciary or enforcing his duties, only the liabilities and duties imposed elsewhere in ERISA can be consulted. The remedies are accordingly restricted to redress breaches described for fiduciaries in the fiduciary section, i.e. 29 U.S.C. §§ 1101–1114. If ERISA makes no provision elsewhere for liability of one fiduciary to another for contribution, then the remedy section should not be expanded to provide one.

The Court concludes that the directive to develop a federal common law under ERISA does not include the right to infer common law rights of contribution and indemnity when the language and structure of the statute leads to a contrary intent. Accordingly, the motion for summary judgment of NBA and Slotkin will be granted to the extent of dismissing Count III of the amended complaint against them. Although the cross-claim of the Rhode Island Bank against co-fiduciaries would likewise be limited, the Rhode Island Bank's cross-claim has been rendered moot by the Court's earlier ruling granting its motion for summary judgment. Accordingly, Hartford's motion against it will be denied as moot.

## V.

### PROHIBITED TRANSACTIONS

■ NBA and Slotkin have moved for summary judgment on their counterclaim against NARDA for restitution to the NARDA Trust of certain fees paid to NARDA. They allege that by approving the decision to receive fees consisting of 1.5% of all life insurance premiums and 4.5% of all medical benefits premiums paid to the NARDA Trust, NARDA violated ERISA's fiduciary standards and prohibited transactions provisions. Similarly, SHG and Gamp

have moved for summary judgment against NARDA, alleging that NARDA engaged in prohibited transactions by accepting the 4.5% fees (on premiums paid for medical benefits) and by making a $537,271.00 loan to the NARDA Trust as part of a workout plan. In response to both motions NARDA asserts that the fees were reasonable and were charged for services that were necessary. It contends that the amount transferred to a workout plan was not a loan, consequently it did not engage in prohibited transactions.

ERISA delineates certain "prohibited transactions" between an ERISA plan and a party in interest:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; ... [and] (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; ...

29 U.S.C. § 1106(a)(1). The prohibitions of 29 U.S.C. § 1106 are modified by exemptions set forth in 29 U.S.C. § 1108:

> The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions: ... (2) Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. § 1108(b)(2). Section 1108(c)(2) also states that "[n]othing in section 1106 of this title shall be construed to prohibit any fiduciary from ... receiving any reasonable compensation for services rendered" except that full-time employees of participants in the plan may not receive additional compensation. Both as a fiduciary and as an employer whose employees are beneficiaries of the plan, NARDA qualifies as a party in interest as that term is used in the prohibited-transactions section. 29 U.S.C. § 1002(14).

Although NARDA identifies seven "services" that it provided to the Trust in exchange for the 4.5% commission it received, defendants contend that NARDA has failed to demonstrate that the services were "necessary," that they were "appropriate and helpful to the plan" and that the compensation for their value was "reasonable." Because these questions are inherently questions of fact that must be resolved by a trial, the Court will not rule as a matter of law whether the transactions are prohibited.

Likewise the terms and conditions of the $500,000 advance made by NARDA and its proper characterization are disputed. When NARDA discovered the extent of the deficit in the medical benefits fund, it considered the alternatives for remedying the situation. In addition to terminating the benefits on October 31, 1987, the NARDA Board of Directors approved a "loan" of $500,000 to a group insurance escrow fund at the prime rate of interest. This fund was established as part of a work-out plan to resolve the many claims made for medical benefits. NARDA obtained the money from the Cole Taylor Bank under a line of credit secured by NARDA's own certificates of deposit. In its amended complaint NARDA described the transaction as follows: "[i]n connection with developing the workout plan to resolve pending claims, NARDA has *lent* more than $537,271.00 to the escrow fund established for the workout" (emphasis added). In its opposition to the motions for summary judgment, however, NARDA withdrew from its characterization of the transaction as a "loan." It states that the $500,000 was not in fact handed over to the NARDA Trust. Rather, NARDA contends that it established the fund as part of a work-out program over which only NARDA had signatory authority. It describes the transfer of money as a "voluntary program" implemented to satisfy the outstanding claims of the NARDA Trust's beneficiaries.

Because the nature of this transaction and the many facts surrounding it are disputed questions of fact, the Court will deny the motions for summary judgment on this ground also.

For the reasons given in this Opinion, it is hereby ORDERED this 3rd day of August, 1990, by the United States District Court for the District of Maryland, that:

1. The motion of NBA and Slotkin to dismiss the complaint for lack of subject matter jurisdiction is denied;

2. The motion of the Rhode Island Bank for summary judgment on the ground that it did not breach its fiduciary duties is granted, and the amended complaint against it is dismissed;

3. The alternative motions of the Rhode Island Bank for summary judgment are denied as moot;

4. The cross-claims of the Rhode Island Bank against the Hartford, SHG, Gamp, NBA and Slotkin, and the counterclaim against NARDA are dismissed as moot;

5. The motions of the Hartford, NBA and Slotkin for summary judgment against the Rhode Island Bank are denied as moot;

6. The motions of the Hartford, NBA and Slotkin for summary judgment because they did not breach their fiduciary duties are denied;

7. The motion of NBA and Slotkin for summary judgment on the claim for indemnification or contribution asserted by NARDA is granted, and Count III of the amended complaint is dismissed;

8. The motion of NBA and Slotkin for summary judgment on their counterclaim against NARDA for restitution to the NARDA Trust of contributions diverted to NARDA is denied; and

9. The motion of SHG and Gamp for summary judgment against NARDA for engaging in prohibited transactions is denied.