Rodney KIM, Plaintiff/Counterclaim–
Defendant/Appellee/Cross–Appellant,

and

Pacific Electrical Contractors Associa-
tion,
Counterclaim–Defendant/Appellee,

v.

Thomas FUJIKAWA; Galo Kimura; Paul
Sialana; Tadashi Narimatsu, Defen-
dants/Counterclaimants/Appel-
lants/Cross–Appellees.

Rodney KIM, Plaintiff/Counterclaim–
Defendant/Appellee,

v.

Thomas FUJIKAWA,
Defendant/Counterclaimant/Appellant,

and

Thomas FUJIKAWA, Third–Party
Plaintiff/Appellant,

v.

Rodney KIM, as Trustee of all PECA–
IBEW Funds, et al., Third–Party
Defendants/Appellees.

Rodney KIM, Plaintiff/Counterclaim–
Defendant/Appellee,

and

Pacific Electrical Contractors Associa-
tion,
Counterclaim–Defendant/Appellee,

v.

Thomas FUJIKAWA; Galo Kimura; Paul
Sialana; Tadashi Narimatsu, Defen-
dants/Counterclaimants/Appellants.

Nos. 87–1801, 87–1931, 88–2509
and 87–2922.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1988.

Decided March 29, 1989.

T. Anthony Gill, Gill, Park, Park & Kim, Honolulu, Hawaii, for defendants/third-party-plaintiff/appellants.

Jeffery S. Harris, Torkildson, Katz, Jossem, Fonseca & Moore, Honolulu, Hawaii, for plaintiff/third-party-defendants/appellees.

Before NELSON, O'SCANNLAIN and TROTT, Circuit Judges.

TROTT, Circuit Judge:

These cases, consolidated for purposes of appeal, involve several issues arising from actions against a fiduciary of employee benefit plans who violated the prohibited transaction provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by transferring assets for the benefit of, and to, parties in interest. Since each appeal involves facts and issues peculiar to it, the appeals are addressed separately. The additional facts necessary for each appeal are added where appropriate.

I

## BACKGROUND

Rodney Kim is Executive Secretary of the Pacific Electrical Contractors Associa-

tion ("PECA"), a multi-employer collective bargaining representative. On January 14, 1985, PECA and the International Brotherhood of Electrical Workers Local No. 1186 ("the Union") entered into a collective bargaining agreement which required employers to contribute to the Annuity, Health and Welfare, Pension, Training, Vacation, Supplementary Unemployment Benefit and Prepaid Legal Funds ("the Funds"). The agreement also established an administrative office ("Ad Office") maintained by representatives of the employers and the Union to provide administrative services to the Funds. This office is managed by a two-person committee, one member of which is selected by the Union and the other member of which is selected by the employers. The agreement requires the operating expenses of the Ad Office to be prorated among the various Funds that utilize its services. The Funds pay all the expenses of the Ad Office.

Kim is the employer representative on the Ad Office committee and Thomas Fujikawa, the Business Manager and Financial Secretary of the Union, is the Union representative on the committee. Tadashi Narimatsu, Galo Kimura, and Paul Sialana ("the outer island representatives") perform services for the Funds on Hawaii, Maui, and Kauai, respectively.

In September 1984, during a limited strike, Kim was informed that the outer island representatives were in charge of the strike on the outer islands. Kim was aware that the outer island representatives were providing some services to the Funds but believed that they were Union employees. He immediately sought to clarify the employment status of the outer island representatives, stating that if they were employees of the Ad Office, they should not perform any Union-related work. Kim attempted to secure the employment records of the outer island representatives. Specifically, he requested time, travel, activity, and pay records. After these efforts were unsuccessful, Kim brought an action pursuant to 29 U.S.C. § 1132(a) against Fujikawa, Kimura, Sialana, and Narimatsu on September 26, 1985. He alleged that the employment of the outer island representa-

tives by the Ad Office was a prohibited transaction under the provisions of ERISA, 29 U.S.C. § 1001, *et seq.*, and sought to hold Fujikawa and the outer island representatives liable for all payments made to the representatives. A counterclaim was filed by Fujikawa on October 16, 1985.

Although they performed some services for the Funds, such as answering participant inquiries, the outer island representatives in fact were substantially engaged in a wide range of Union-related activities. They maintained Union referral procedures and out-of-work registers. They checked job sites of nonunion contractors for compliance with proper building permits and made all arrangements for quarterly and special Union membership meetings. In addition, they made safety inspections, organized nonunion employees, and monitored job sites for nonunion work.

The Ad Office paid the salary and expenses incurred by the outer island representatives, including expenses for office supplies, travel and auto expenses, phone bills, and insurance. It also reimbursed Narimatsu and Kimura for their office rental payments. The Union did not reimburse the Ad Office for any of these expenses. The outer island representatives did not maintain records to determine which expenses related to services performed for the benefit of the Union and which were for the benefit of the Funds.

II

APPEALS NOS. 87–1801/87–1931

A. FACTS AND PROCEEDINGS

After a bench trial, the district court in an opinion filed March 3, 1987, found that the payments made to the outer island representatives violated the prohibited transaction provisions of section 406(a)(1)(C) and (D) of ERISA, 29 U.S.C. § 1106(a)(1)(C) and (D). Pursuant to section 409(a) of ERISA, 29 U.S.C. § 1109(a), the district court assessed the total cost of the outer island representative system to Fujikawa, less reimbursement made by the Union. The outer island representatives were enjoined

from further employment by the Ad Office but were not held liable to Kim. Finally, the court dismissed the counterclaim against Kim in which he was alleged to have breached his fiduciary duties. An appeal and cross-appeal were taken from the judgment.[1]

## B. DISCUSSION

### 1. Liability for Entire Cost of Prohibited Transaction [2]

Fujikawa does not appeal the district court's holding that the outer island representative system violated the prohibited transaction provisions of ERISA.[3] He contends, however, that the district court erred in holding him personally liable for the entire cost of the prohibited transaction, i.e., the outer island representative system, while simultaneously recognizing that at least some portion of the transaction benefited the Funds.

Liability for breaching fiduciary responsibility is judicially assessed pursuant to section 409(a) of ERISA, which provides in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Neither section 409(a) nor any other section of ERISA discloses the methods which are to be used in measuring the "losses" for which breaching fiduciaries are to be held liable. Indeed, "ERISA does not define 'loss' as that term is used in section 409." *Donovan v. Bierwirth*, 754 F.2d 1049, 1052 (2d Cir.1985).

■ Fujikawa argues that because some "non-neglible portion" of the work performed by the outer island representatives benefited the Funds, that portion should not be considered a "loss[ ] to the [Funds] resulting from ... such breach." Thus, he requests that this court "vacate the monetary judgment," and "remand the matter for further proceedings to determine the proportion of the cost of the outer island representative system which was in fact a loss to the Funds." We reject this argument.

■ In determining the amount that a breaching fiduciary must restore to the Funds as a result of a prohibited transac-

---

1. The notice of appeal in No. 87–1801 states that "Thomas Fujikawa, et al." appeal from the decision in Civ. No. 85–1188. The use of "et al." following Fujikawa's name does not sufficiently indicate an intention to appeal by Kimura, Sialana, or Narimatsu. Accordingly, they are not parties to this appeal. *See Torres v. Oakland Scavenger Co.*, —— U.S. ——, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir.1988).

2. We have carefully considered all of Kim's arguments concerning appellate jurisdiction over this issue. We reject them. The court of appeals has the power and the discretion to consider an issue not raised at the district court level. *Hormel v. Helvering*, 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941). This court will exercise that discretion when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. *See Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986), *cert. denied*, 481 U.S.

1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). In this appeal, the only issue is whether Fujikawa presented sufficient evidence to allow the district court to determine what portion of the payments made in connection with the prohibited transaction did not constitute a loss to the Funds. Since this is an issue of law, we will address the merits on appeal.

3. The district court determined that the transaction at issue violated section 406(a)(1)(C) and (D). That section sets forth:

Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

\* \* \* \* \* \*

(C) furnishing of goods, services, or facilities between the plan and a party in interest;
(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.
29 U.S.C. § 1106(a)(1)(C) and (D).

tion, the court "should resolve doubts in favor of the plaintiffs." *Leigh v. Engle,* 727 F.2d 113, 138–39 (7th Cir.1984). "This course [would] avoid the ... unfair result[ ] of ... depriving the plaintiffs of any recovery simply because the defendants have made it difficult to disentangle" the prohibited transaction. *Id.* at 139. *See also Bierwirth,* 754 F.2d at 1056 ("This is nothing more than application of the principle that, once a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer"). We adopt this principle in this case and place squarely on the breaching fiduciary the burden of demonstrating what portion of the activities of the outer island representatives benefited the Funds. This is a burden Fujikawa failed to meet.

As the district court noted, "the outer island representatives have not maintained records to determine what expenses are used for the benefit of the Union." The record also indicates that the outer island representatives did not keep adequate records of their time and that the Ad Office did not audit or verify those records that were kept. Under these circumstances, we conclude that the defendants did not present sufficient evidence to allow the district court to apportion the payments made.[4] The district court was therefore correct in assessing against Fujikawa the entire cost of the prohibited transaction, less reimbursements made by the Union.

### 2. Liability of Parties in Interest

■ Kim cross-appeals that portion of the district court's order finding that there was no basis for holding the outer island representatives, as parties in interest, jointly and severally liable with Fujikawa, the breaching fiduciary. Kim contends that parties in interest found to have participated in a prohibited transaction under § 406 are jointly and severally liable for the funds they received in the course of the

prohibited transaction.[5] However, since Fujikawa has completely satisfied the judgment, Kim lacks standing to raise this issue. Accordingly, the cross-appeal is dismissed.

### III

### APPEAL NO. 88–2509

### A. FACTS AND PROCEEDINGS

Several weeks after judgment was rendered in Civ. No. 85–1188 (Appeals Nos. 87–1801/87–1931) finding Fujikawa liable for the monies paid to the outer island representatives from September 5, 1985 until the time of trial in November 1986, Kim brought an identical action in Civ. No. 87–0213 seeking to have Fujikawa reimburse the Funds for monies paid to the outer island representatives for the period from trial until judgment was rendered in Civ. No. 85–1188 on March 3, 1987.

Fujikawa responded by filing a counterclaim and a third-party complaint, seeking a right of contribution from Kim and the other trustees of the Funds. Fujikawa alleged that Kim and the other trustees participated in the maintenance of the prohibited practice. The district court dismissed the counterclaim and third-party complaint, holding that ERISA did not permit a fiduciary to file an action for contribution. The district court, however, granted Fujikawa leave to amend under some theory other than contribution.

Accordingly, Fujikawa filed an amended counterclaim alleging that Kim had essentially approved and ratified the employment of the outer island representatives, and that if such employment constituted a prohibited transaction, Kim should similarly be held liable for damages. Fujikawa's amended third-party complaint alleged that the other trustees similarly maintained and ratified the prohibited practice; thus, if

---

**4.** The lack of adequate proof on this issue is suggested by Fujikawa's comment, made in a subsequent appeal consolidated with this case and pertaining to the same issue, that "it should be incumbent on the trial court to make the best estimate possible."

**5.** It is undisputed that the outer island representatives, while not fiduciaries, are parties in interest because they provide services to and are employees of the Funds. *See* ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

Fujikawa is found liable, the other trustees should likewise be held liable.

The district court granted summary judgment dismissing the amended counterclaim and third-party complaint, holding that Kim was the virtual representative of the third-party trustee defendants and that the judgment in Civ. No. 85–1188 barred the actions set forth in the amended claims. The district court similarly granted Kim's motion for summary judgment on his complaint, holding that Fujikawa made payments from the Funds to parties in interest in violation of section 406(a)(1)(C) and (D) of ERISA. The court again assessed, for the period in question, the entire cost of the outer island representative system against Fujikawa, plus prejudgment interest. The court allowed Fujikawa offsets for amounts actually paid by the union for use of the representatives. Judgment was entered against Fujikawa in the amount of $59,948.32.

Fujikawa appeals the district court's holding that he was liable for the entire unreimbursed cost of the prohibited transaction, contending again that the court should have reduced his liability by any amount of benefit which the parties in interest may have provided to the Funds. He also contends that the district court erred in ruling that ERISA does not provide him a right of contribution from Kim and the other trustees and that Civ. No. 85–1188 barred his amended counterclaim and third-party complaint.

B. DISCUSSION

1. Liability for Entire Cost of Prohibited Transaction

Fujikawa argues that the district court erred in assessing as damages under 29 U.S.C. § 1109 the entire cost of the prohibited transaction, where not all of the transaction constituted a "loss" to the Funds. We conclude, however, that there was no error. When the materials submitted in connection with a motion for summary judgment indicate that the non-moving party will be unable to carry its burden of proof on an issue at trial, summary judgment may be entered against the party on that issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, as in Civ. No. 85–1188, Fujikawa failed to point to specific facts indicating that he would be able to establish what portion of the cost of the prohibited transaction was not a "loss." Accordingly, the district court, in granting summary judgment, properly assessed against Fujikawa the entire cost of the transaction, less reimbursements made by the Union.

2. Right of Contribution

■ Fujikawa contends that ERISA does not and should not prohibit actions for contribution among fiduciary trustees. He argues that, in enacting ERISA, Congress provided for "broad equitable remedies," including contribution, and that actions for contribution are consistent with the language and purposes of the statute. We disagree. As the Supreme Court noted in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 141–42, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1984), section 409 of ERISA, 29 U.S.C. § 1109, only establishes remedies for the benefit of the *plan*. Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*. *See Call v. Sumitomo Bank*, 689 F.Supp. 1014, 1017–20 (N.D.Cal.1988).

■ Furthermore, the Supreme Court has noted that, in light of "ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute,'" it seems clear that "Congress did *not* intend to authorize other remedies [under ERISA] that it simply forgot to incorporate expressly." *Russell*, 473 U.S. at 146, 105 S.Ct. at 3092 (emphasis in original)(quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980)). Given this observation, we cannot agree with Fujikawa's contention that Congress implicitly intended to allow a cause of action for contribution under ERISA. *See Russell*, 473 U.S. at 145, 105 S.Ct. at 3092 (" 'The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that

Congress did not intend to provide.' ") (quoting *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)). Indeed, implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution " 'is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans],' " and where there is no indication in the legislative history "that Congress was concerned with softening the blow on joint wrongdoers." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981)(using these arguments to conclude that there is no right to contribution under the antitrust laws) (quoting *Piper v. Chris–Craft Industries, Inc.,* 430 U.S. 1, 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124 (1977)) (emphasis omitted).

### 3. Dismissal of Amended Counterclaim and Third–Party Complaint

■ The district court dismissed these claims on the basis that Fujikawa was collaterally estopped from asserting them. It reasoned that Fujikawa already had litigated these claims in Civ. No. 85–1188 and that the issues were "necessarily decided" in favor of Kim and, in his capacity as their "virtual representative," in favor of the third-party defendant trustees.

#### a. Amended Counterclaim

The district court held that Fujikawa's amended counterclaim against Kim, which alleged that Kim had approved the prohibited transaction and should similarly be liable for damages, was barred because that claim had already been litigated and necessarily decided in the counterclaim brought by Fujikawa in Civ. No. 85–1188, in which no relief had been granted against Kim.

Fujikawa argues that it remains "speculative whether the trial court in 85–1188 necessarily decided the issue," citing to additional facts not pled in Civ. No. 85–1188 evidencing Kim's further "approval" of the outer island representative system.[6]

The litigation of an issue presented and necessarily decided in a prior action between the same parties is foreclosed by the doctrine of issue preclusion. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Deutsch v. Flannery,* 823 F.2d 1361, 1364 (9th Cir. 1987). Merely submitting additional allegations that are not sufficiently different from those contained in the previous complaint will not render the doctrine inapplicable. *Deutsch,* 823 F.2d at 1364.

In both the counterclaim in 85–1188 and the amended counterclaim in 87–0213 (the subject of this particular appeal), Fujikawa alleged that Kim was liable for violations of section 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), for knowing of the prohibited practice, yet allowing it to continue. The allegations added to the amended counterclaim lack any substantive significance from that contained in the 85–1188 counterclaim.[7] Thus, the same issue was involved in each action.

Furthermore, the district court necessarily decided the issue when it explicitly stated: "I find for Kim and PECA on the claims asserted against them." Opinion (Civ. No. 85–1188) at 3.

Accordingly, we hold that the doctrine of issue preclusion presents an entirely sufficient basis for dismissing Fujikawa's amended counterclaim.

#### b. Amended Third–Party Complaint

■ Notwithstanding the doctrine of "virtual representation" and the collateral

---

6. The additional allegations set forth in Fujikawa's amended counterclaim included a November 1985 agreement between Kim and Fujikawa, based upon advice of Fund counsel, to maintain the operation of the Ad Office at status quo ante and to make no changes in the employment of the outer island representative system pending the outcome of the litigation in Civ. No. 85–1188.

7. Indeed, Fujikawa deems the additional allegations in his amended counterclaim to be *"reaffirmations* of [Kim's] commitment to maintain the [outer island representative] system." Appellant's Brief at 26 (emphasis added).

estoppel effect of a prior action, we affirm the district court's dismissal of the amended third-party complaint on a more fundamental basis. While the district court dismissed the initial third-party claim on the ground it sought the unavailable remedy of contribution and granted leave for Fujikawa "to assert a [third-party] cause of action under some theory other than contribution," we find that Fujikawa has failed to do so and the court's generous leave to amend constituted a *non sequitur* of sorts.

> Fed.R.Civ.P. 14 states in pertinent part:
> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.*

Fed.R.Civ.P. 14(a) (emphasis added). Thus, Fujikawa's third-party complaint is valid only if the other trustees "[are] or may be liable to [Fujikawa] for all or part of [Kim's] claim against [Fujikawa]."

The purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third party who may be derivatively liable to the defendant for all or part of the plaintiff's original claim. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1442, at 202–03 (1971).

■ Of particular importance is that while Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability. 3 J. Moore, *Moore's Federal Practice* ¶ 14.03[1] and [3] (2d ed. 1987). The substantive basis for Fujikawa's third-party complaint is a personal claim for contribution or indemnity under ERISA.[8]

Accordingly, Fujikawa's third-party claim necessarily fails since ERISA, the governing substantive law, does not recognize a right of contribution. Thus, the third-party complaint does not contain a legally cognizable third-party claim under Rule 14(a), and the district court's dismissal of the complaint is affirmed.

## IV

### APPEAL NO. 87–2922

#### A. FACTS AND PROCEEDINGS

■ After judgment was rendered in Civ. No. 85–1188 (Appeal Nos. 87–1801/87–1931), Kim moved for an award of attorneys' fees in the amount of $106,875.50, pursuant to 29 U.S.C. § 1132(g)(1). The district court considered the relevant criteria in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980), and concluded that Kim was entitled to reasonable attorneys' fees. The court then performed a lodestar calculation and examined whether any of the factors in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), required adjustment of the lodestar amount. In an opinion and order filed October 21, 1987, the court awarded Kim $101,238.75 in attorneys' fees representing 1039.50 hours of work. The fees order was subsequently amended to expressly exclude the outer island representatives from liability for Kim's attorneys' fees.

On appeal, Fujikawa does not dispute Kim's entitlement to attorneys' fees or that the rates applied were reasonable. He does, however, contend the district court erred in determining that 1039.50 hours represented a reasonable amount of time expended on the case by Kim's attorneys. Specifically, he argues (1) time spent on a motion for summary judgment duplicated time spent on pretrial preparation, trial and posttrial briefing; and (2) because Kim was

---

**8.** The prayer for relief in Fujikawa's amended third-party complaint, while carefully avoiding the use of terms imputing derivative liability, states:

> If the employment of the outside island representatives was a prohibited practice, and FUJIKAWA is liable for it, Third Party Defendants as trustees be likewise held liable by the Court, for damages between the time of trial and the time of judgment in 85–1188.

represented by more than one attorney, it is "highly probable" that the hours claimed represented duplicative efforts.

## B. DISCUSSION

The determination of the amount of a fee award is reviewed for abuse of discretion. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended,* 808 F.2d 1373 (9th Cir.1987).

In *Chalmers,* we discussed the proper procedure for computing the amount of an attorney fee award, stating:

> The initial determination of reasonable attorney's fees is calculated by multiplying the number of hours reasonably expended ... by a reasonable hourly rate.... In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended....
>
> ... Next, the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees.... What remains important is that the district court articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should reasonably be compensated.

796 F.2d at 1210–11 (citations omitted).

Here, the district court devoted much of its opinion to determining whether the time expended by Kim's attorneys was reasonable. After setting forth the parties' respective arguments, Judge Panner specifically found that (1) "the hours spent on the summary judgment motion were reasonable"; (2) "plaintiff spent a reasonable amount of time on pretrial preparation and on the trial"; and (3) "[g]iven the complexity of the facts and the law, the hours spent on posttrial briefs were reasonable".

Because "[t]he district court had 'the benefit of the adversary process' and was able to develop 'a sense of the extent to which the claim for services was reasonable,'" *Keith v. Volpe,* 833 F.2d 850, 859 (9th Cir.1987), "'the district court [was] in the best position to determine in the first instance the number of hours reasonably expended.'" *Id.* (quoting *Chalmers,* 796 F.2d at 1211). With this deference in mind, we find no abuse of the district court's discretion and the award of attorneys' fees is affirmed.[9]

## V

## ATTORNEYS' FEES ON APPEAL

Kim seeks attorneys' fees on appeal as provided for by 29 U.S.C. § 1132(g)(1), which permits courts, at their discretion, to award reasonable attorneys' fees.[10] The factors to be considered in exercising discretion to award fees include: 1) the degree of the opposing party's culpability or bad faith; 2) the ability of the opposing party to satisfy an award of fees; 3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; 4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and 5) the relative merits of the parties' positions. *Hummell,* 634 F.2d at 453.

---

**9.** Fujikawa speculates that because more than one attorney was involved, it is "highly probable" some duplication of effort existed. Such an argument ignores the fact that detailed time records were submitted and reviewed by both court and counsel in this case. Furthermore, the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 785 (9th Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). Here, the participation of more than one attorney constituted a reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved in this case.

**10.** In some situations, our discretion may be limited. "If a plan participant or beneficiary prevails in an action to enforce his rights under the plan, he *ordinarily* should recover attorney's fees in the absence of special circumstances making an award unjust." *Smith v. Retirement Fund Trust,* 857 F.2d 587, 592 (9th Cir.1988) (citing *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984)) (emphasis added). Such is not the situation in this case.

1436

After due consideration of the foregoing factors, we decline to award fees in these consolidated cases.

## VI

## CONCLUSION

The judgment of the district court is AFFIRMED.