RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0161P (6th Cir.)
File Name: 02a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SECRETARY OF THE UNITED
STATES DEPARTMENT OF
LABOR,
     *Plaintiff-Appellee,*

    *v.*

GEORGE D. GILLEY; BILLY
DEAN GOFORTH; CENTURY
HEALTH SERVICES, INC.,
    *Defendants-Appellants.*

No. 00-6413

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 97-00504—William J. Haynes, Jr., District Judge.

Argued: March 19, 2002

Decided and Filed: May 7, 2002

Before: SILER and GILMAN, Circuit Judges;
HEYBURN, Chief District Judge.[*]

———————————

[*] The Honorable John G. Heyburn II, Chief United States District
Judge for the Western District of Kentucky, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:**  William P. Suriano, LAW OFFICES OF WILLIAM P. SURIANO, Riverside, Illinois, for Appellants. Robin Springberg Parry, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellee. **ON BRIEF:** William P. Suriano, LAW OFFICES OF WILLIAM P. SURIANO, Riverside, Illinois, for Appellants. Robin Springberg Parry, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Century Health Services, Inc. (CHS), a holding company for a number of home healthcare agencies, established an Employee Stock Ownership Plan (ESOP) in 1993 and appointed its top two officers, George Gilley and Bill Goforth, to serve as the trustees. CHS contributed $2,766,659.77 to the ESOP during 1994 and 1995. All but $6,659.77, however, was promptly withdrawn from the ESOP for use in meeting CHS's general corporate operating expenses. The Secretary of the United States Department of Labor brought suit against CHS and the trustees, claiming that their failure to replace the withdrawn funds with assets of equivalent value violated the Employee Retirement Income Security Act (ERISA). Summary judgment was granted in favor of the Secretary, with the district court holding the defendants jointly and severally liable for the $2,760,000 that was never replaced. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1997. Although CHS retained certain assets after the sale to IHS, it was also still subject to various liabilities, thus making the net fair market value of CHS's shares unclear from the record. The record *is* clear, however, concerning the admissions by Gilley and Goforth that the transferred stock had "little or no value." To the extent that the amount of the loss caused by the defendants' breach of fiduciary duty was at all ambiguous, the district court did not err in resolving that uncertainty against the defendants. We therefore agree with the district court's determination that the CHS stock had no fair market value at the time of its conveyance to the ESOP, and that the loss suffered by the ESOP was as found by the court.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment below.

two to three years.  The [ESOP] received stock after the sale of substantial [CHS] assets to IHS.  *At that time and now, [CHS's] stock is virtually worthless.*  A loss to an ERISA plan is based upon the present market value . . . .  The [ESOP's] $2.67 [sic] assets in 1995 is gone and that loss is recoverable.

(Emphasis added.)  Based upon the above findings of fact and conclusions of law, the district court held that CHS, Gilley, and Goforth are "individually and jointly liable for the restoration of the [ESOP's] assets in 1995, i.e., $2.76 million."

Neither party has cited any relevant case law on the question of which party bears the burden of proving the amount of loss in an ERISA action.  Although the statute does not state how such a loss should be measured, several circuits have held that, in measuring a loss, the burden of persuasion should be placed on the breaching fiduciary.  *Roth v. Sawyer-Cleator Lumber* Co., 61 F.3d 599, 602 (8th Cir. 1995) ("To the extent that there are ambiguities in determining loss, we resolve them against the trustee in breach."); *Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989) ("In determining the amount that a breaching fiduciary must restore to the [benefit fund] as a result of a prohibited transaction, the court should resolve doubts in favor of the plaintiffs.") (quotation marks omitted); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("[O]nce a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer.").  We now join these other circuits in holding that, to the extent that there is any ambiguity in determining the amount of loss in an ERISA action, the uncertainty should be resolved against the breaching fiduciary.

As noted above, the defendants have conceded that they breached their fiduciary duty to the ESOP and that they failed to present any evidence that the CHS stock had a positive fair market value at the time it was transferred to the ESOP in

## I.   BACKGROUND

### A.   Factual background

CHS established an ESOP on September 29, 1993.  The trustees of the ESOP were George Gilley, the Chairman of the Board of CHS, and Bill Goforth, the President and CEO of CHS.  CHS contributed the following amounts to the ESOP: $1,106,659.77 on September 13, 1994, $1,000,000 on August 14, 1995, and $660,000 on August 29, 1995.  On either the same or the next day after each contribution was made, however, all but $6,659.77 was transferred back to CHS: $1,100,000 on September 14, 1994, $1,000,000 on August 14, 1995, and $660,000 on August 29, 1995.  The total amount thus removed from the ESOP was $2,760,000.  CHS issued promissory notes to the ESOP as consideration for each of these transfers, providing that the amounts owed would be paid in CHS stock of equivalent value.

On September 16, 1996, before CHS delivered any stock in accordance with the promissory notes, CHS and eight of its ten subsidiary home health agencies transferred the bulk of their operating assets to Integrated Health Services, Inc. (IHS).  IHS, as part of this agreement, assumed and paid significant liabilities owed by CHS and the eight subsidiary home health agencies.

CHS finally transferred 50,937 shares of its stock to the ESOP, in purported satisfaction of the promissory notes, on February 15, 1997.  The number of shares was determined by an appraisal of the shares' value as of the end of 1993 and 1994, the years in which the $2,760,000 was transferred from the ESOP to CHS, not on the basis of the shares' fair market value in 1997.  As a result, the appraisal did not take into account CHS's September 16, 1996 sale of assets to IHS.

### B.   Procedural background

On May 13, 1997, the Secretary filed a complaint under ERISA, 29 U.S.C. §§ 1001-1461, against CHS, Gilley, and

Goforth (the defendants), alleging that they had breached their fiduciary duties to the ESOP. A False Claims Act (FCA) lawsuit had already been brought against the defendants in 1996. After the Justice Department intervened in the FCA claim, the two cases were consolidated for discovery and trial.

The Secretary and the defendants filed cross-motions for summary judgment. After hearing oral argument, the district court granted summary judgment in favor of the Secretary, holding that the defendants were "jointly and severally liable to restore to the [ESOP] the total amount of $4,168,040." This amount represents the $2,760,000 that was transferred from the ESOP to CHS in 1993 and 1994, plus accrued interest. A timely appeal by the defendants followed.

## II.   ANALYSIS

### A.   Standard of review

A district court's dismissal of a complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure is reviewed de novo. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

### B.   Amount of loss

The defendants contend that the district court erred in adopting the Secretary's argument that the CHS stock that was transferred to the ESOP had no fair market value. They maintain that the burden of proving the amount of the loss was on the Secretary, and that the Secretary did not submit any competent proof on this issue. As a result, the defendants claim that the value of the stock constitutes a genuine issue of material fact. The defendants concede, however, that they breached their fiduciary duty. They also concede that they did not present any evidence of the fair market value of the stock. Finally, the defendants acknowledge that "if this Court were to hold that [the defendants], rather than the Secretary, bore the burden of proof [on this issue], then this appeal can be disposed of readily."

In concluding that the defendants were jointly and severally liable to restore $4,168,040 to the ESOP, the district court made the following findings of fact: "[T]he defendants' answer to the United States' complaint concedes that after the sale [of assets] to IHS, [CHS] stock 'had little or no value' and the [ESOP] 'received no proceeds or financial benefit from the [IHS] sale.' Gilley's deposition testimony is to the same effect." The district court did note, however, that after the sale of assets to IHS, CHS "retained significant assets, including a price adjustment . . . ; a $500,000 purchase price hold-back . . . ; $500,000 in [a] litigation fund . . . ; . . . a shared interest with IHS in the results from [CHS's] pending appeals challenging the Government's Medicare overpayment claims estimated at $4,000,000[;]" and the right to operate two home health agencies.

After making the above findings of fact, the district court concluded that the ESOP

  suffered a loss when the $2.76 million were transferred from the [ESOP] to [CHS] in 1994 and 1995. The [ESOP] did not accrue any benefit for that transfer for