James A. OPENSHAW, Jr.,et al. **Plaintiffs,**

v.

**COHEN, KLINGENSTEIN & MARKS, INC., Defendant.**

### No. CIV.A. WDQ03–1838.

United States District Court,
D. Maryland,
Northern Division.

June 3, 2004.

Betty Sue Diener, Goldberg Pike and Besche PC, Baltimore, MD, for Plaintiffs and Counter Defendants.

Howard G. Goldberg, Goldberg Pike and Besche PC, Baltimore, MD, for Plaintiffs.

Charles I. Poret, Robert Allen Cohen, Ross L. Hirsch, Dechert LLP, New York, NY, Frank J. Eisenhart, Dechert LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

QUARLES, District Judge.

Pending are Plaintiffs' Motion to Dismiss Defendant's Counterclaim, Plaintiffs' Motion to Strike Answer to Complaint, Counterclaim, With Respect to Affirmative Defenses, and Plaintiffs' Motion for Leave to File Amended Complaint. For the following reasons, the Motion to Dismiss the Counterclaim and the Motion to Strike Affirmative Defenses will be granted and the Motion for Leave to File an Amended Complaint will be granted in part and denied in part.

### I.  Background

Plaintiffs are trustees of the Severance & Annuity Plan and Pension Plan of The International Union of Operating Engineers Local 37 ("Plans"). Defendant Cohen, Klingenstein & Marks, Inc. ("CKM")

is an investment firm. Plaintiffs retained CKM to:

> "[I]nvest and reinvest the cash and securities in the ACCOUNT with ADVISOR's complete discretion, without being required to consult with CLIENT in advance, and at CLIENT'S sole risk. However ADVISOR will exercise discretion prudently and in CLIENT'S best interest and subject to such investment objectives and guidelines as ADVISOR and CLIENT adopt from time to time."

Compl. Ex. 1 at ¶ 2.

Pursuant to this agreement, Plaintiffs gave CKM between ten and fifteen million dollars to manage. Complaint at ¶ 20. CKM invested significant portions of the Plans' assets in WorldCom, Inc. ("WorldCom") stock. Complaint at ¶¶ 25–65. CKM alleges that despite warnings from numerous financial institutions, CKM continued to purchase WorldCom stock as its price plummeted which caused the Plans to lose hundreds of thousands of dollars. *Id.*

Plaintiffs brought this action on behalf of the Plans on June 20, 2003 alleging that CKM's actions violated Title 29 U.S.C. § 1104. CKM answered the complaint, asserting seven affirmative defenses and a counterclaim against the trustees for contribution. Answer at 9–11. Plaintiffs have moved to dismiss the counterclaim and strike the affirmative defenses.

While those motions were pending, Plaintiffs requested leave to file an amended complaint to state claims under 29 U.S.C. § 1106(b)(1) and add a prayer for punitive damages. CKM opposes the amendments as futile.

## II. Analysis

### A. Motion for Leave to File an Amended Complaint

The grant of leave to amend is favored absent prejudice to the opposing party. *See Intown Properties Management, Inc.* *v. Wheaton Van Lines, Inc.,* 271 F.3d 164, 170 (4th Cir.2001), *citing Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 158, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Moreover, "[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations ... conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980). Futility is governed by the same standard as a Fed. R.Civ.P. 12(b)(6) motion to dismiss. *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir.1995); *see also Burger King v. Weaver,* 169 F.3d 1310, 1320 (11th Cir.1999).

A Fed.R.Civ.P. 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). All allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Raj Matkari, et al.,* 7 F.3d 1130, 1134 (4th Cir.1993). If any possible basis for relief has been pled, the Court must deny the motion to dismiss. *Garland v. St. Louis,* 596 F.2d 784 (8th Cir. 1979), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992.

Plaintiffs seek to amend their complaint to state a claim under Title 29 U.S.C. § 1106(b)(1), which prohibits a plan fiduciary from dealing with plan assets "in his own interest or for his own account." Mot. for Leave to Amend at ¶ 5; 29 U.S.C. § 1106(b). Plaintiffs also seek to amend their prayer for relief to include punitive

damages for all counts. Mem. in Support of Mot. for Leave to Amend at 2.

### 1. Section 1106(b)(1) Claims

■ Plaintiffs seek leave to assert § 1106(b) claims [1] because discovery revealed that CKM was one of the ten largest shareholders of WorldCom stock. Mem. in Support of Mot. for Leave to Amend at 2; Amended Complaint at ¶ 35. Plaintiffs contend that CKM's WorldCom interest motivated it to continue to buy WorldCom stock although its value was collapsing. Amended Complaint at ¶¶ 34–51; ¶¶ 92–99. CKM argues that the Amended Complaint merely claims that it gambled on WorldCom stock to increase its business and reputation and that this self-interest cannot satisfy the requirements of § 1106(b)(1). CKM Sur–Reply at 2–3.[2]

If an ERISA fiduciary takes unreasonable risks with plan assets to increase its professional reputation, the fiduciary has not administered the plan "for the exclusive purpose of providing benefits to plan beneficiaries." *Leigh v. Engle,* 727 F.2d 113, 129 (7th Cir.1984); *see also id.* at 127 ("The use of plan assets for any interest, financial or nonfinancial, other than an interest of the plan and its beneficiaries" violates § 1106(b)(1)). Under such circumstances, there may be § 1106(b)(1) liability even if the gamble is successful; the unnecessary *risk* of plan assets generates § 1106(b)(1) liability. *Id.* at 119(finding § 1106(b)(1) liability although the ERISA plan reaped substantial returns from self-interested investments); *id.* at 122 (the unnecessary risk of plan investments violates ERISA fiduciary duties).[3] Accordingly, because Plaintiffs have stated a claim under § 1106(b)(1) the amendment is not futile and leave to amend will be granted with respect to those claims. *Perkins,* 55 F.3d at 917; *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992.[4]

### 2. Punitive Damages

Though Congress imported some principles of trust law into ERISA, the ultimate inquiry remains whether the statute authorizes the relief sought. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see Mertens v. Hewitt Associates,* 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Title 29 U.S.C. § 1109

---

1. The two § 1106(b) claims are based on the same conduct with respect to the two plans. Amended Complaint at ¶ 94 (Annuity Plan); ¶ 105 (Pension Plan).

2. Though the Court generally does not consider Sur–Replies, the Court will exercise its discretion to consider the document. Local Rule 105.2(a) (D.Md.).

3. CKM argues that § 1106(b)(1) requires more egregious conduct than that which would violate Title 29 U.S.C. § 1104(a)(1). CKM Sur–Reply at 3. Section § 1106(b)(1) is merely "a gloss on duty of loyalty required by [§ 1104]." *Leigh,* 727 F.2d at 126. As such, § 1106(b)(1) merely lists specific conduct that violates the somewhat amorphous fiduciary duty described in § 1104; there is no heightened standard of fiduciary breach under

§ 1106(b)(1). *Id.* at 123 ("The *per se* rules of [§ 1106] make much simpler the enforcement of ERISA's more general fiduciary obligations").

4. Contrary to CKM's assertions, any interest, including the fiduciary's interest in its professional reputation, is sufficient to implicate the duty of loyalty. *Leigh,* 727 F.2d at 127; Ethan G. Stone, Note, *Must We Teach Abstinence? Relationship Investments and the Lessons of Fiduciary Duty,* 94 Colum. L.Rev. 2222, 2264–65 (1994)(recognizing conflict of interest when agent handling investments acts in his own self interest rather than interests of the beneficiaries); CKM Sur–Reply at 1–2 (CKM's argument that its "interest in[ ] trying to maintain its client base; trying to succeed in its business" is insufficient to implicate self-interested transaction).

enumerates the relief available to an ERISA plan in an action based on the breach of a fiduciary duty. 29 U.S.C. § 1109(a); 29 U.S.C. § 1132(a)(2). Section 1109(a) authorizes the award of, *inter alia,* "such other equitable or remedial relief as the court may deem appropriate, including the removal of the fiduciary." 29 U.S.C. § 1109(a).[5] The Court must determine whether Congress, in differentiating between "equitable" and "remedial" relief, intended to allow the award of punitive damages. *See Mertens,* 508 U.S. at 258 n. 8, 113 S.Ct. 2063 (noting that there is a distinction between the two words in the statute).

■ Historically, trust actions were brought in equity courts, where punitive damages were not available absent express statutory authorization. *Mertens,* 508 U.S. at 270, 113 S.Ct. 2063 (White dissenting) ("courts of equity would not—absent some express statutory authorization—enforce penalties or award punitive damages"). The Restatement (Second) of Trusts does not include punitive damages among the remedies available in actions for breach-of-trust or breach of loyalty. *Sommers Drug*

Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1463–64 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987), *citing* Restatement (Second) of Trusts §§ 205–06. Accordingly, because punitive damages were not typically available under trust law before the enactment of ERISA, such damages are only available if clearly permitted by the statutory language. *Powell v. Chesapeake and Potomac Telephone Co. of Va.,* 780 F.2d 419, 424 (4th Cir.1985) ("The legislative history supports [plaintiff's] theory that Congress intended to import into ERISA principles of trust law ... [but punitive damages were] generally not available in an action by a beneficiary against a trustee for breach of trust");[6] *Sommers,* 793 F.2d at 1464 ("The Restatement, therefore, suggests that the law of trusts does not permit punitive damages for breach of fiduciary duty"); *see also Mertens,* 508 U.S. at 254, 113 S.Ct. 2063 (There is strong evidence that "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly") (emphasis in original).[7]

---

**5.** Section 1109(a) specifically authorizes relief that: 1) restores to the plan any losses resulting from each breach of fiduciary duty; 2) restores to the plan any profits of such fiduciary which have been made through its use of plan assets; and 3) removes the fiduciary. 29 U.S.C. § 1109(a).

**6.** *Powell* is not dispositive of the punitive damages issue because it dealt with a claim for punitive damages under Title 29 U.S.C. § 1132(a)(3), which authorizes "other appropriate equitable relief." *Powell v. Chesapeake and Potomac Telephone Co. of Va.,* 780 F.2d 419, 424 (4th Cir.1985). Plaintiffs bring their claims under Title 29 U.S.C. § 1109(a), which authorizes the award of, *inter alia,* "such other equitable or remedial relief as the court may deem appropriate, including the removal of the fiduciary." 29 U.S.C. § 1109(a). Though the Supreme Court interpreted the scope of remedies to *beneficiaries* of plans under § 1109(a) in *Mass. Mut. Life Ins. Co. v.*

*Russell,* 473 U.S. 134, 144 n. 12, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Court reserved the issue of whether punitive damages can be recovered under § 1109(a) on behalf of the plan itself. *Id.*

**7.** The *Mertens* Court noted that the once well-established rule that prevented the award of punitive damages in breach-of-trust cases may have been eroding at the time Congress passed ERISA. *Compare Mertens,* 508 U.S. at 258 n. 8, 113 S.Ct. 2063 ("A year ... [before ERISA was enacted] a major treatise on remedies was prepared to say only that 'a majority of courts that have examined the point probably still refuse to grant punitive damages in equity cases.' [citation omitted]. It would have been even riskier to presume that punitive damages were unavailable in that subclass of equity cases in which law-type damages were routinely awarded, namely, breach-of-trust cases") *with id.* at 270, 113

"Remedial relief" does not state clear authorization for punitive damages that the history of trust law and nature of the extraordinary remedy require. *Id.; Mertens,* 508 U.S. at 254, 113 S.Ct. 2063 (There is strong evidence that "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly"); *Sommers,* 793 F.2d at 1464 (§ 1109(a) does not permit the recover of punitive damages); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216 (8th Cir.1981) ("We do not think punitive damages are provided for in ERISA. Ordinarily punitive damages are not presumed; they are not the norm; and nowhere in ERISA are they mentioned. If Congress had desired to provide for punitive damages, it could have easily so stated, as it has in other acts"). Accordingly, Plaintiffs' request for leave to amend the complaint to include a prayer for punitive damages will be denied, because such an amendment is futile.[8]

### B. Motion to Dismiss Defendant's Counterclaim

■ CKM, which is no longer a fiduciary to the Plan, has filed a counterclaim against the trustees ("Local 37") which asserts that "[i]f CKM is found liable to the Plans ... the Trustees should be held liable to CKM for contribution." Counterclaim at ¶ 6. Local 37 has moved to dismiss the counterclaim because ERISA does not provide a right to contribution among fiduciaries. Mem. in Support of Mot. to Dismiss Counterclaim at 20. CKM does not assert the statutory basis of this counterclaim right in either its counterclaim or its opposition to its dismissal; it argues that the right should be implied as a matter of federal common law. *See* Counterclaim; Mem. in Support of Opposition to Mot. to Dismiss Counterclaim at 16 ("Thus, the question here is whether a right of contribution exists under ERISA's federal common law").

As with punitive damages, a contribution right under ERISA must have some statutory basis. *Russell,* 473 U.S. at 140–42, 105 S.Ct. 3085 (looking to language of ERISA to determine whether Congress intended to allow the award of punitive damages); *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir.1991) ("ERISA abounds with the *language* and *terminology* of trust law ...[and contains provisions that] *codify* certain principles developed in the evolution of the law of trusts") (emphasis added); *Kim v. Fujikawa,* 871 F.2d 1427, 1432 (9th Cir.1989);

---

S.Ct. 2063 (White dissenting) (The trend identified by the majority "was driven in large part by the 'modern' merger of law and equity and by the consequent belief that there is no longer any reason to disallow 'legal' remedies in what were traditionally 'equitable' actions. Accordingly, the majority's observation in no way undermines the validity of the traditional rule—well ensconced at the time of ERISA's enactment—that punitive damages were not an appropriate *equitable* remedy, even in trust cases"). This uncertainty about the status of punitive damages at the time of ERISA's enactment militates against inferring that punitive damages are permitted in such actions absent clear statutory authorization.

8. Because Congress did not authorize punitive damages, such damages are not "necessary to effectuate the purposes of ERISA." *See U.S. Steel Mining Co., Inc. v. District 17, United Mine Workers of America,* 897 F.2d 149, 153 (4th Cir.1990) (courts are "constrained to only fashion those remedies that are appropriate and necessary to effectuate the purposes of ERISA"); *NARDA, Inc. v. Rhode Island Hospital Trust National Bank,* 744 F.Supp. 685, 696 (D.Md.1990) (J. Niemeyer) (Because in crafting ERISA "the common law of trusts was drawn upon freely ... when some clearly established aspect of common law is not incorporated, the omission would appear intended"). Accordingly, the Court will not create a punitive damages remedy as a matter of federal common law. *Id.*

*NARDA, Inc. v. Rhode Island Hospital Trust National Bank,* 744 F.Supp. 685, 696 (D.Md.1990) (J. Niemeyer) ("the Court concludes that any mandate to develop a federal common law is not an order to brush away the intent of Congress as revealed by the statute, both in language and structure"); *see also U.S. Steel Mining Co., Inc. v. District 17, United Mine Workers of America,* 897 F.2d 149, 153 (4th Cir.1990) (courts are "constrained to only fashion those remedies that are appropriate and necessary to effectuate the purposes of ERISA"). The Second Circuit has allowed a cause of action for contribution despite the lack of express statutory authorization for such actions. *Chemung Canal Trust Co.,* 939 F.2d at 15 ("In ERISA, Congress never dealt with contribution expressly, so the question is whether such a right can be recognized either by implication from the statute, or as a part of federal common law").[9] The Ninth Circuit has rejected such an approach, finding no basis for a contribution action. *Kim,* 871 F.2d at 1432–33 ("Fujikawa contends that ERISA does not and should not prohibit actions for contribution among fiduciary trustees.... We disagree.... 29 U.S.C. § 1109 only establishes remedies for the benefit of the *plan.* Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a breaching fiduciary ... Indeed, implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution 'is a member of the class [e.g. fiduciaries] whose

activities Congress intended to regulate for the protection of benefit of an entirely distinct class [e.g. ERISA plans],' and where there is no indication in the legislative history 'that Congress was concerned with softening the blow on joint wrongdoers") (internal citations omitted, modifications in original); *NARDA,* 744 F.Supp. at 696 ("remedies are provided to fiduciaries only insofar as they advance" the protection afforded "participants, beneficiaries and plans ..." and in light of this purpose, "[i]t is not surprising that rights of indemnification and contribution among culpable fiduciaries are not provided. On the contrary ERISA precisely tailors fiduciary liability to fit particular breaches, thereby minimizing any perceived need for the common law rights of indemnification and contribution").

Congress was free to choose which portions of trust law were codified in ERISA. *See Russell,* 473 U.S. at 140–42, 105 S.Ct. 3085; *Chemung Canal Trust Co.,* 939 F.2d at 16. Though the common law of trusts allowed a cause of action for contribution, there is no indication that Congress intended that portion of trust law to be incorporated into ERISA. *Chemung Canal Trust Co.,* 939 F.2d at 16, *citing* Restatement (Second) of Trusts § 258 (1959) (common law of trusts recognized contribution right); *see Mertens,* 508 U.S. at 258 n. 7, 113 S.Ct. 2063 (noting that punitive damages may have been emerging as appropriate trust relief when ERISA was enacted but finding that such relief was not authorized by the statute).

---

**9.** In finding a cause of action for contribution, the Second Circuit also noted

"If applied here, the *Cort v. Ash* test would cause an automatic dismissal of [plaintiff's] claims, because the first part of the test asks whether the party seeking the remedy is a member of the class for whose benefit the legislation was intended, and clearly, ERISA was enacted to protect plan participants and beneficiaries, not former fiducia-

ries such as [plaintiff]. Such an analysis is too simplistic, however, for the problem before us."
*Chemung Canal Trust Co.,* 939 F.2d at 15.
In *Russell,* the Supreme Court used the *Cort v. Ash* factors to examine whether 29 U.S.C. § 1109(a) implicitly authorized punitive damages. *Russell,* 473 U.S. at 145–46, 105 S.Ct. 3085.

Furthermore, ERISA's structure counsels against the creation of a cause of action for contribution. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir.1992) ("Federal common law, however, does not grant federal courts 'carte blanche authority ... to re-write a federal statute'") (internal quotation omitted). "ERISA precisely tailors fiduciary liability to fit particular breaches, thereby minimizing any perceived need for the common law rights of indemnification and contribution." *NARDA*, 744 F.Supp. at 696. Moreover, 29 U.S.C. § 1110, with limited exceptions, renders exculpatory provisions "void as against public policy." *Id.;* George Lee Flint, Jr., Philip W. Moore, Jr., *Article: Dedication to Joseph M. Butler ERISA: A Co-Fiduciary has No Right to Contribution and Indemnity,* 48 S.D. L.Rev. 7, 48–49 (2003) (arguing that contribution is impermissible in light of prohibition of exculpatory provisions and availability of insurance); *see Coleman,* 969 F.2d at 58 ("federal common law, however, does not grant federal courts 'carte blanche authority ... to re-write a federal statute'"). Accordingly, because there is no basis for CKM's counterclaim for contribution, it will be dismissed.

### C. Motion to Strike Defendant's Affirmative Defenses of Estoppel, Waiver, Ratification, Assumption of the Risk, and Contributory Negligence or Recklessness as Legally Insufficient

■ Fed.R.Civ.P. 12(f) states that a Court "may order stricken from any pleading any insufficient defense ..." *Id.* An affirmative defense will be stricken "if it is impossible for the defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint ..." *Williams v. Provident Investment Counsel, Inc.,* 279 F.Supp.2d 894, 906 (N.D.Ohio 2003).

■ CKM does not cite any provision of ERISA that authorizes a fiduciary to absolve itself of liability because of another fiduciary's acts or omissions. The proposition is antithetical to the provisions of ERISA which "tailor[ ] fiduciary liability to fit particular breaches" and ensure that "legal responsibility for management of ERISA plans [is] clearly located." *NARDA,* 744 F.Supp. at 696; *Dardaganis v. Grace Capital Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989); *see also* 29 U.S.C. § 1110. If CKM were allowed to assert the proposed defenses, it could escape liability *to the plan* because another fiduciary engaged in misconduct. *Williams,* 279 F.Supp.2d at 909 ("[A]ny recovery under [§ 1109] goes to the Plan, not the trustees, and the Plan's participants should not be punished for the acts of the trustees. Thus, Provident is not allowed to reduce or eliminate its liability to the Plan on the defense that other fiduciaries breached their fiduciary duties"); *see also Dardaganis,* 889 F.2d at 1241 ("the trustees of an ERISA plan cannot waive the right of the beneficiaries to have fiduciaries comply with [29 U.S.C. § ] 1104(a)(1)(D)").[10] Because there is no indi-

---

**10.** The *Williams* Court noted the possibility that equitable defenses could be available to a defendant fiduciary if the plaintiff fiduciary is the sole beneficiary under the plan. *See Williams v. Provident Investment Counsel, Inc.,* 279 F.Supp.2d 894, 909 (N.D.Ohio 2003); *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund,* 847 F.2d 113, 122 (3d Cir.1988) (the rule that "a party should not be allowed to profit from its own wrongs is particularly apposite when dealing with [ERISA] because Congress has emphasized the equitable character of these plans"). When there is no allegation that Local 37 is the only Plan participant, ERISA's statutory policy in favor of protecting Plan beneficiaries is unopposed and controls the disposition of the matter. *Kim,* 871 F.2d at 1433; *NARDA,* 744 F.Supp. at 696.

cation that Congress intended to "soften[ ] the blow" of ERISA liability for breaches of fiduciary duty, allowing a fiduciary to immunize itself by asserting the breach of another fiduciary is impermissible under the statute. *Kim*, 871 F.2d at 1433 ("implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution is a member of the class [e.g. fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g. ERISA plans] and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers"); *see, e.g., U.S. Steel Mining Co.*, 897 F.2d at 153 (courts are "constrained to only fashion those remedies that are appropriate and necessary to effectuate the purposes of ERISA").[11] An affirmative defense that would allow a breaching fiduciary to insulate itself from liability at the expense of Plan beneficiaries is contrary to language, structure, and purpose of ERISA. *Id.*; *NARDA*, 744 F.Supp. at 696 ("[R]emedies are provided to fiduciaries only insofar as they advance" the protection afforded "participants, beneficiaries and plans ...")." Accordingly, Local 37's motion to strike CKM's affirmative defenses will be granted.

### III. Conclusion

The Motion to Dismiss the Counterclaim and the Motion to Strike Affirmative Defenses will be granted and the Motion for Leave to File an Amended Complaint will be granted in part, with respect to the claims under 29 U.S.C. § 1106(b)(1), and denied in part, with respect to the prayer for punitive damages.

---

11. The contribution analysis is instructive with respect to the treatment of affirmative defenses. Allowing contribution at least ensures that the Plan is compensated for the fiduciary breach. If equitable defenses are

### ORDER

For the reasons stated in the Memorandum Opinion, it is this 3rd day of June, 2004, ORDERED that:

1. Plaintiffs' Motion to Dismiss Defendant's Counterclaim BE, and hereby is, GRANTED;

2. Plaintiffs' Motion to Strike Affirmative Defenses BE, and hereby is, GRANTED;

3. Plaintiffs' Motion for Leave to File Amended Complaint BE, and hereby is, DENIED IN PART with respect to the prayer for punitive damages in Plaintiffs' Amended Complaint;

4. Plaintiff's Motion for Leave to File Amended Complaint BE, and hereby is, GRANTED IN PART with respect to the remainder of Plaintiffs' Amended Complaint;

5. That the Clerk of the Court MAIL copies of this Order and the Memorandum Opinion to counsel.

---

permitted, there is no recovery for the Plan. Accordingly, if contribution is antithetical to ERISA's statutory scheme, so is allowing a fiduciary to escape liability to the plan based on another fiduciary's misconduct.